[Civ. No. 11592. Fourth Dist., Div. Two. Nov. 16, 1971.]

NATIONAL LIFE OF FLORIDA CORPORATION et al., Petitioners, v. THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; EUGENE R. CUTHBERTSON et al., Real Parties in Interest.

**COUNSEL**

O'Melveny & Myers, Bennett W. Priest and Richard J. Stone for Petitioners.

No appearance for Respondent.

Virtue & Scheck, Edgar E. Scheck, Rutan & Tucker, Milford W. Dahl, Jr., and M. Stephen Coontz for Real Parties in Interest.

**OPINION**

**THE COURT.**—On the petition of National Life of Florida Corporation and four of its officers, namely, Farris Bryant, Oliver Wilhelm, Ray W. Richardson and William L. Kyle, Jr., an alternative writ of mandate issued from this court directing the Superior Court in and for the County of Orange to quash the service of summons made upon the petitioners, or to show cause why it had not done so.

The real parties in interest are Eugene R. Cuthbertson and Erwood G. Edgar, who are plaintiffs below in separate but related actions against the petitioners. Richardson is a defendant in the Cuthbertson case, but not in the Edgar case. Other defendants in both cases who are not petitioners here are National Life Insurance Company of Florida and Nathan Goller.

Edgar's complaint alleges for a first cause of action that in December 1968, in Orange County, California, he purchased 12,500 shares of the treasury stock of National Life of Florida Corporation for $137,500; that the contract therefor was made in California; that the certificate was delivered to him in Orange County; that the sale was in violation of the then effective Corporations Code section 25500 (now §§ 25103, 25110, 25120 and 25130) in that no permit was obtained from the Commissioner of Corporations for the sale of the stock; that the sale was void; and that he has offered to return the stock and that defendants refuse to return the consideration given therefor. Second and third causes of action sounding in fraud are also alleged. A fourth cause of action is directed at Nathan Goller for legal malpractice, founded on his negligence in giving a written opinion that the sale was proper under the laws of California. The complaint filed by Cuthbertson relates to 13,000 shares of treasury stock of National Life of Florida Corporation purchased for $136,500 but otherwise can be considered identical to Edgar's complaint, so far as this application is concerned.

Petitioners assert that the superior court has no jurisdiction over them inasmuch as "None of the petitioners is a resident of the State of California, none do business in the State of California, and none have sufficient contacts with the State of California to support jurisdiction in the [Superior] Court." In aid of their original motion in the court below, petitioners filed declarations to the effect that the sale of the shares of stock was negotiated and in all respects concluded outside of California. Real parties in interest filed declarations in opposition to the motion.

■ The question is whether, on the record before it, the superior court had a clear and present duty to quash the service of summons and whether the petitioners had a clear, present, and beneficial right to the performance of that duty, with no other adequate means of enforcing it. (Code Civ. Proc., §§ 418.10, 1085, 1086.) ■ The scope of appellate review of the question is limited to a determination of whether there is substantial evidence in the record before it to support the order of the trial court, resolving factual conflicts in favor of the prevailing party. (*Murray* v. *Superior Court,* 44 Cal.2d 611, 619-620 [284 P.2d 1]; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].)

The facts as presented by the petitioners and as presented by real parties in interest are in conflict in many respects. Resolving the conflicts in favor of the prevailing party, the facts are set forth in the following paragraphs.

Cuthbertson is chairman of the board and Edgar is a director of International Funding Corporation. Bryant and Wilhelm were also directors of International Funding Corporation and were present in California on a frequency of every two weeks until their resignation in 1970.

On November 18, 1968, Bryant, president of National Life of Florida Corporation, and Wilhelm, a senior vice president, were in New York City concerning a proposed private placement of 58,600 unregistered shares of the corporation. Cuthbertson and August J. Marra, a fellow director of International Funding Corporation, were also in New York. Cuthbertson suggested to Bryant and Wilhelm that the other directors of International Funding Corporation might be interested in purchasing the shares for their own account.

No definite agreement for purchase of the shares was made at the New York meeting. Cuthbertson returned to California to develop the possibility of sale to the other directors of International Funding Corporation. There were numerous communications between the real parties in interest and other directors of International Funding Corporation in California and the petitioners in Florida regarding this matter.

A "confirmation" letter was sent by Cuthbertson and Marra on November 25, 1968, to establish the price of the shares. The language of the letter was dictated by Bryant.

On December 3, 1968, Bryant and Wilhelm were present in Beverly Hills, California, at a meeting of the board of directors of International Funding Corporation. Although the petitioners deny it, the real parties in interest state that the purchase of the shares was discussed among those present on that date, being Bryant, Wilhelm and directors of International Funding Corporation, including Cuthbertson and Marra.

On December 11, 1968, in Huntington Beach, California, Cuthbertson phoned Bryant in Jacksonville, Florida, and confirmed for himself and several other directors that they had decided to make the purchase. Cuthbertson went to Florida as agent for the several individual purchasers. The transaction was closed in Florida at Richardson's suggestion, in order to avoid California corporate securities laws and to qualify the transaction under the intrastate and private offering exemptions. Cuthbertson was advised that "everything would be all right" and that the transaction should be handled in the manner structured by petitioners. After the closing Cuthbertson learned that the shares were all issued in his name. After further communications with Richardson and Kyle, the shares were later reissued to the five respective purchasers and in at least two cases were sent on to banks in California.

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10, effective July 1, 1970.)

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U.S. 7,14, 733. ■ But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057].)

■ Jurisdiction over the petitioners can be posited on two of the several recognized bases of judicial jurisdiction spelled out in the approved

Judicial Council comments relating to section 410.10, being "doing an act in a state" and "causing an effect in a state by an act or omission elsewhere."

■ As to the first basis: "A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from such act, and any cause of action not in tort arising from such act unless the nature of the act and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. (*Rosenblatt* v. *American Cyanamid Co.,* (1965) 86 S.Ct. 1, 15 L.Ed.2d 39 (tortious act); *Hess* v. *Pawloski* (1927) 274 U.S. 352, 47 S.Ct. 632; *Olberding* v. *Illinois Central R. Co.,* (1953). 346 U.S. 338; *Allen* v. *Superior Court* (1953) 41 Cal.2d 306, 311, 259 P.2d 905; Restatement, Judgments § 23; Restatement (Second), § 36 and *Reporter's Note.*)" (1969 Judicial Council Report Appendix II as reprinted in Attorney's Guide to California Jurisdiction and Process (Cont. Ed. Bar) p. 25.)

■ As to the second basis: "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. (*Hanson* v. *Denkla* (1958) 357 U.S. 235; *McGee* v. *International Life Ins. Co.,* (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; . . . cf. *Travelers Health Assn.* v. *Virginia* (1950) 339 U.S. 643, 70 S. Ct. 927; *Jeter* v. *Austin Trailer Equip. Co.* (1953) 122 Cal.App.2d 376, 381, 265 P.2d 130; see Restatement (Second) § 37.)" (*Ibid*, pp. 27-28; see generally, *Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57].)

■ Similar bases exist for assuming jurisdiction over the corporate petitioner arising out of the activities of its agents.

Returning to the factual record, taking the case as a scheme to sell shares to several California residents, negotiated through interstate communications and involving at least one meeting of the parties within California before the deal was closed and the certificates were transmitted to the state, the facts fit both of the stated bases of jurisdiction. Moreover, given the further background of a substantial commercial transaction effected by agents whose activities are unhindered by state boundaries, it is not unreasonable for California—where, as noted, some of the acts occurred and where the results thereof are experienced—to exercise jurisdiction.

█ The petitioners argue that, given jurisdiction, the court should nevertheless have dismissed or stayed the actions brought by real parties in interest under principles of *forum non conveniens.* (Code Civ. Proc., § 410.30.) However, as already noted, the plaintiffs are California residents seeking the benefit of a rule of California statutory law relating to acts done, in part at least, in California. In addition, it was also part of the record in the court below that the defendant National Life Insurance Company of Florida is licensed to do an insurance business in California and that defendant Goller is a resident of and practices law in California.

█ The function of mandate is "to compel the performance of an act which the law specifically enjoins." (Code Civ. Proc., § 1085.) █ Application of the *forum non conveniens* principle rests in the sound discretion of the trial court. (*Price* v. *Atchison, T. & S. F. Ry Co.,* 42 Cal.2d 577, 580 [268 P.2d 457, 43 A.L.R.2d 756].) █ Although mandate lies to control judicial discretion when such discretion has been abused, discretion is abused only when, in its exercise, a court exceeds the bounds of reason, all circumstances before it being considered. (*State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].) █ The record discloses no such abuse of discretion.

The alternative writ is discharged. The application for a peremptory writ is denied.