**FIRST TRUST NATIONAL AS-SOCIATION, as Indenture Trustee, Plaintiff,**

**v.**

**JONES, WALKER, WAECHTER, POI-TEVENT, CARRERE & DENEGRE, and William H. Hines, Defendants.**

No. 1:97cv363BrR.

United States District Court, S.D. Mississippi, Southern Division.

Jan. 13, 1998.

Lucien M. Gex, Jr., Lucien M. Gex, Ronald J. Artigues, Jr., Gex & Artigues, Waveland, for Plaintiff.

William L. McDonough, Jr., Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Gulfport, MS, for Defendants.

## MEMORANDUM OPINION

BRAMLETTE, District Judge.

This matter is before the Court on defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or In the Alternative for Improper Venue (docket entry # 9), pursuant to Rules 12b(2) and (3) of the Federal Rules of Civil Procedure. After reviewing the motions, briefs, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds as follows:

### I. FACTUAL HISTORY

This is a legal malpractice action, filed by First Trust National Association ("FTNA") against the law firm of Jones, Walker, Waechter, Poitevent, Carrere & Denegre ("Jones, Walker"). The claim is based on an opinion letter authored by William H. Hines, a partner in Jones, Walker and also a named defendant.

The plaintiff, FTNA, is a national banking association organized under the laws of the United States with its offices and principal place of business in St. Paul, Minnesota. FTNA filed the present law suit in its capacity as indenture trustee for the holders ("Noteholders") of 12% first mortgage notes of Belle Casinos, Incorporated. The defendant, Jones, Walker, is a limited liability partnership of attorneys specializing, in part, in the area of admiralty and maritime law. Jones, Walker maintains its principal place of business in New Orleans, Louisiana. William Hines is also a resident of Louisiana.

This case arises from a $75,000,000 bond issue to finance the construction of two dockside casinos in Mississippi, one in Tunica County and one in Biloxi. The primary collateral securing the repayment of the $75,000,000 were the casinos themselves.

On October 12, 1993, BCBI executed a First Preferred Fleet Mortgage to ensure that the bondholders had a valid, first priority lien upon the Tunica Casino. Jones, Walker issued an opinion letter regarding the Fleet Mortgage. Jones, Walker's opinion letter stated that the Fleet Mortgage "constitutes a legal, valid and binding obligation ... enforceable ... according to its terms," which is "superior to all other liens."

The bonds were issued and sold to numerous investors who believed that their investment was secured, at least in part, by a valid, first priority Fleet Mortgage upon the Tunica Casino. When BCBI encountered financial trouble, Charles N. White Construction Company ("White Construction"), BCBI's contractor, pursued litigation, first in Mississippi state court and then in the federal courts of Mississippi to declare the Fleet Mortgage invalid.

On January 10, 1995, Judge Edward R. Gaines of the United States Bankruptcy Court for the Southern District Court of Mississippi found the Fleet Mortgage to be invalid and unenforceable, contrary to the opinion of Jones, Walker. Consequently, FTNA, in its capacity as indenture trustee for the noteholders, settled with White Construction for an amount exceeding $1,700,000, and subsequently, filed the present law suit. Jones, Walker has filed the present motion to dismiss, arguing a lack of personal jurisdiction or, in the alternative, improper venue.

### II. DISCUSSION

When a nonresident defendant moves to dismiss for lack of personal juris-

diction, the plaintiff bears the burden of establishing the Court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994). In a federal diversity suit, the reach of federal jurisdiction over nonresident defendants is measured by a two-step inquiry. *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984). First, the law of the forum state must provide for the assertion of such jurisdiction. Second, the exercise of jurisdiction under the state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. *Smith*, 743 F.2d at 278.

### A. FORUM LAW—MISSISSIPPI'S LONG ARM STATUTE

In construing the law of the forum state, the Court looks first to Mississippi's long arm statute which provides in pertinent part:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss.Code Ann. § 13–3–57 (Supp.1996). In the present case, the plaintiff contends that the Court has personal jurisdiction over Jones, Walker pursuant to the tort prong of section 13–3–57.

■ Section 13–3–57 provides that a nonresident defendant will be subjected to the jurisdiction of the Court if it "commit[s] a tort in whole or in part in this state against a resident or nonresident of this state." In construing the tort prong of Mississippi's long arm statute, the Mississippi Supreme Court has held that personal jurisdiction over a nonresident defendant who allegedly committed a tort is proper if any of the elements of the tort—or any part of an element—takes place in Mississippi. *Smith v. Temco*, 252 So.2d 212, 216 (Miss.1971). Since injury is necessarily required to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1168 (5th Cir.1985) (quoting *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss.1971)).

In the present case, FTNA argues that it suffered injury in Mississippi because its rights to its main collateral, located in Mississippi, were impaired. The Court does not agree.

■ Recently, the Fifth Circuit discussed the differences in injury and its consequences with regard to personal jurisdiction:

In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury. Recognizing that such collateral consequences may be far-reaching (particularly in a commercial tort situation such as the one before us), our precedent holds that consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur.

*Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir.1996). FTNA is asking this Court to exercise personal jurisdiction at the site of the Casino itself. In its Reply Brief, the plaintiff states that "[d]efendants may well have committed their torts in Texas in whole or in part, but First Trust was clearly injured in Mississippi because its collateral was located here." (Pl.'s Reply Brf. at 3). This Court is not prepared to make such an assumption. The location of the collateral is by no means an absolute indication of the place of injury. In fact, there has been no evidence submitted to suggest that the *injury* to the plaintiff occurred in this forum. The plaintiff's principal place of business is in

St. Paul, Minnesota. The opinion letter was drafted by the defendant in New Orleans, Louisiana at the bequest of Bear, Stearns & Co., an investment bank in New York City. The opinion letter was then sent to counsel for Bear, Stearns in Dallas, Texas. In other words, the present case involves a financial institution suing a New Orleans based law firm in the Southern District of Mississippi for an opinion issued by the law firm on a ship mortgage prepared by Texas attorneys to a New York investment banking house and delivered to counsel for the banking house in Dallas.

While the plaintiff may well have suffered injury, it is clear that such injury was not suffered in the forum simply because the subject matter of the transaction at issue was located in Mississippi. In fact, it is not clear that even the consequences, economic or otherwise, occurred in Mississippi. Accordingly, the Court finds that the plaintiff has failed to satisfy the tort prong of Mississippi's long arm statute, and thus, this Court may not exercise personal jurisdiction over the defendant law firm.

Even assuming a tort did occur in whole or in part in Mississippi, the plaintiff has still failed to show that the exercise of personal jurisdiction would comport with due process.

## B.   THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

■■■ Once an analysis of the forum state's law has been completed, the Court considers whether the exercise of jurisdiction over the defendant comports with due process. The general constitutional test for personal jurisdiction is well-established. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the forum state must also be such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice."

*International Shoe,* 326 U.S. at 316. A defendant's contacts are sufficient if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■■■ In its consideration of this standard, the Court's analysis depends upon whether the plaintiff seeks the exercise of personal jurisdiction in a suit unrelated to the defendant's contacts with the forum state or in a suit arising out of or related to the defendant's contacts with the forum. "General jurisdiction" is personal jurisdiction based on a defendant's contacts with the forum that are unrelated to the controversy. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). To exercise general jurisdiction the Court must determine whether "the contacts are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction." *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir.1985) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Jones, Walker is a law firm based in New Orleans, Louisiana. Affidavit testimony provided by Charles W. Lane, III, a senior partner in Jones, Walker, states that Jones, Walker has never had any offices in Mississippi, has never owned personal property in Mississippi, is not qualified to do business in Mississippi, has no agent for service of process in Mississippi, and has never advertised or otherwise solicited business in Mississippi. While Jones, Walker does occasionally represent Mississippi residents, and some members of the firm are licensed to practice law here, this does not constitute "systematic and continuous" contacts, sufficient to establish general jurisdiction. *Helicopteros,* 466 U.S. at 416; *see also Myers v. Emery,* 697 S.W.2d 26,31 (Tex.Ct.App.1985). Therefore, the Court is unable to exercise general jurisdiction in this action.

■■■ "Specific jurisdiction," however, is personal jurisdiction based on contacts with the forum state that are related to the particular controversy. *Helicopteros,* 466 U.S. at 414. Even a single purposeful contact may in a proper case be sufficient to

meet the requirement of minimum contacts when the cause of action arises from the contact. *Micromedia v. Automated Broadcast Controls,* 799 F.2d 230, 234 (5th Cir. 1986). To exercise specific jurisdiction, the Court must examine the relationship among the defendants, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). With these well-established principles in mind, the Court begins its due process analysis by looking to whether the defendant has had "minimum contacts" with the forum arising out of the present litigation.

▇▇▇▇ In its brief, the plaintiff describes only one "contact" that the defendant has had with the forum. The plaintiff writes: "In the present case, Defendants provided a legal opinion regarding Mississippi properties at the request of a Mississippi client. This action arises out of that contact." (Pl.'s Resp. at 6). The defendants respond to this allegation, asserting that Jones, Walker did not prepare the opinion letter at the request of a Mississippi client. (Def.'s Reply at 1). Unlike the plaintiff, the defendant supports this contention with affidavit testimony of William H. Hines. The affidavit provides in part that "Jones, Walker had no contact with BCBI and dealt solely with attorneys from the Akin Gump [Texas based] and Gibson Dunn [Texas based] law firms in connection with the rendering of the legal opinion in question." (Supp. Aff. of William H. Hines at 2–3). However, the plaintiff responds by pointing to the opinion letter itself, which begins:

> We have acted as special maritime counsel to Biloxi Casino Belle Incorporated, a Mississippi corporation ("Mortgagor"), in connection with the transactions set forth in that certain First Preferred Fleet Mortgage dated October 12, 1993 (the "Fleet Mortgage").

(Pl.'s Reply at 2). Nevertheless, the Fifth Circuit has held that "[t]he bare existence of an attorney-client relationship is not sufficient" to confer personal jurisdiction over a nonresident attorney. *Trinity Indus., Inc. v. Myers & Associates,* 41 F.3d 229, 230 (5th Cir.1995). In *Trinity,* the Fifth Circuit found personal jurisdiction in Texas where the nonresident attorney considered Trinity, a Texas corporation, a "major client;" represented the company for over eight years; and appeared pro hac vice for the client in the Northern District of Texas over a three-year period. *Id.* at 231. Here, there is nothing more than an alleged attorney-client relationship between an out-of-state defendant and an in-state client.

Other than the alleged attorney-client relationship, the Court is unable to find that Jones, Walker has had *any* contacts with the forum state arising out of the present litigation. Accordingly, the Court finds that to exercise personal jurisdiction over the defendant would be in violation of the protection afforded the defendant by the Due Process Clause of the Fourteenth Amendment.·

▇▇▇▇ Finally, the plaintiff argues that jurisdiction is proper because the "effects" of the defendant's actions were felt in the forum. However, the Fifth Circuit has stated that the "effects test" is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state. *Allred,* 117 F.3d at 286. As discussed, the defendant's actions do not meet the minimum contacts standard. Moreover, the present case is based on allegations of negligence. The effects test is generally associated with allegations relating to intentional torts. *See Waffenschmidt v. MacKay,* 763 F.2d 711, 723 (5th Cir.1985) ("[I]n all cases, the effect in the forum must have been purposeful.") (citing *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 (5th Cir.1981)); *Zumbro, Inc. v. California Natural Products and Imagine Foods, Inc.,* 861 F.Supp. 773, 782 (D.Minn.1994) (noting that effects test "generally has been limited to intentional torts"); *see also Calder v. Jones,* 465 U.S. 783, 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (distinguishing untargeted negligence).

## III. CONCLUSION

To establish personal jurisdiction over a nonresident defendant, a party must first meet at least one prong provided under Mississippi's long arm statute. In the present

case, the plaintiff failed to do this. The plaintiff attempted to show that the injury resulting from the negligence of the defendant occurred in the forum. However, while the consequences of that injury may have occurred in the forum, it is clear that the injury itself did not. Since the initial hurdle of Mississippi's long arm statute has not been cleared, this Court is unable to exercise personal jurisdiction over the defendant. However, even assuming that the long arm statute has been met, this Court may not hear the present case, since to do so would not comport with due process.

The plaintiff argues that it was injured in Mississippi because its collateral was located here. Nevertheless, the Court has seen no evidence to indicate that the defendant was ever here regarding the present case. While the Court is aware that a court may exercise personal jurisdiction over a party who has never set foot in the jurisdiction, the defendant must still have some form of contact with the state. In this case, such contacts are nonexistent.

Accordingly, for the reasons set forth above, this Court finds that the defendant Jones, Walker and William H. Hines' motion to dismiss for lack of personal jurisdiction (entry #9) should be granted. The motion to dismiss for improper venue is thereby rendered moot. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a separate judgment in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue. Each party shall bear their respective costs.