United States Court of Appeals,

Fifth Circuit.

No. 93-9169.

TRINITY INDUSTRIES, INC., Plaintiff-Appellant,

v.

MYERS & ASSOCIATES, LTD., et al., Defendants-Appellees.

Jan. 4, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Trinity Industries, Inc. appeals the dismissal for lack of personal jurisdiction of its suit against its former attorneys. Concluding that the requisite jurisdiction exists, we reverse and remand.

*Background*

In ruling on a motion to dismiss without an evidentiary hearing, as was done here, the district court must accept as true the uncontroverted allegations in the complaint and resolve in favor of the complainant any factual conflicts posed by the affidavits.[1] The following accords with that rubric for purposes of today's disposition.

In 1984 Trinity, a Delaware corporation with its principal place of business in Dallas, Texas, purchased certain assets of Pullman Standard, Inc., and engaged the latter's Illinois patent attorneys, Myers & Associates, Ltd., for representation in patent and trademark matters. From 1984 to early 1993 the Myers firm, through its name partner Richard J. Myers, and Edward D. Gilhooly, a contract attorney, represented Trinity on an ongoing basis, including defense of a patent infringement suit in the Northern District of Texas. Myers identified 40 matters that his firm was handling for Trinity as of February 1993.

In December 1992 Johnstown American Corporation, a Trinity competitor in Pennsylvania,

---

[1] *Wilson v. Belin,* 20 F.3d 644 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 322, --- L.Ed.2d ---- (1994).

filed a patent infringement action against Trinity in district court in the Western District of Pennsylvania. According to Trinity, Myers and Gilhooly counseled Johnstown in the preparation and prosecution of that litigation.

Trinity filed the instant action in Texas state court against Myers, Gilhooly, and the Myers firm, alleging breach of fiduciary duty, civil conspiracy, and negligence. The defendants removed the action to federal court and sought dismissal for lack of personal jurisdiction. The district court granted their motion and Trinity timely appealed.

*Analysis*

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a forum state court. Because the Texas long-arm statute extends to the fullest constitutional limits, defendants' amenability to suit in Texas turns on an analysis of due process parameters.[2]

Due process permits the assertion of specific jurisdiction over an out-of-state defendant if he has "purposefully directed his activities at residents of the forum state ... and the litigation results from alleged injuries that arise out of or relate to those activities,"[3] unless the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When the district court rules on a motion to dismiss without an evidentiary hearing the plaintiff need only present a *prima facie* case of personal jurisdiction.[4] We conclude that Trinity has done so.

The *Burger King* Court directed us to take a "highly realistic"[5] approach to deciding whether a defendant has established the requisite minimum contacts. The bare existence of an attorney-client relationship is not sufficient.[6] Here, however, there is more. The record reflects a factual scenario

---

[2]*Wilson.*

[3]*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted).

[4]*Wilson.*

[5]471 U.S. at 479, 105 S.Ct. at 2185.

[6]Id.; *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

sufficient to support an inference that the defendants purposefully availed themselves of the privilege of doing business in Texas.[7]  Myers considered Trinity a major client.  His firm represented the Texas-based company over the course of eight years, regularly handling patent matters involving the former Pullman-Standard assets.  The legal representation required regular mail and telephonic communications with Texas and, on occasion, physical presence for meetings in Dallas.  Over a three-year period Myers appeared *pro hac vice* for Trinity in the Northern District of Texas.  Further, the Myers firm billed Trinity in Texas and payment was forthcoming from Texas.

These contacts amount to a substantial connection with Texas and cannot accurately be characterized as random, fortuitous, or incidental.[8]  Rather, they indicate that the defendants deliberately availed themselves of the benefits of an ongoing relationship with a Texas client and reasonably should have anticipated the possibility of being haled into court in Texas for claims arising out of or related to that relationship.[9]  As the Court observed in *Burger King,* an individual who purposefully directs his activities to forum state residents and derives benefits therefrom should be answerable in the forum for the consequences of his activities;  "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."[10]  That Trinity initially solicited the services of the Myers firm does not change this result.

---

[7]*See Burger King,* 471 U.S. at 473, 105 S.Ct. at 2182-83 (with respect to interstate contractual obligations, personal jurisdiction exists over parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state");  *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1170 (5th Cir.1985) ("It is not unfair to require a nonresident to defend itself in the courts of the forum state if the nonresident engaged in activities that will support an inference that the nonresident defendant purposefully availed [itself] of the benefits of conducting business in the forum.")  (internal quotation and citation omitted).

[8]*Cf. Holt* (specific jurisdiction was lacking where performance of the drilling contract from which the litigation arose was centered elsewhere);  *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223 (8th Cir.1987) (personal jurisdiction over the defendant attorneys did not lie where a single lawsuit gave rise to the litigation, the plaintiff was one of several clients brought in to share the costs, and the principal connection to the forum was plaintiff's residence).

[9]*Cf. Bullion v. Gillespie,* 895 F.2d 213 (5th Cir.1990) (specific jurisdiction over nonresident doctor exists where forum state patient had an ongoing relationship with the doctor and treatment in part occurred in the forum state);  *T.M. Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310 (9th Cir.1987) (provision of ongoing accounting services to forum resident was sufficient to support specific jurisdiction over out-of-state accountant).

[10]471 U.S. at 474, 105 S.Ct. at 2183.

Although personal jurisdiction does not lie when the defendant cannot control vulnerability to suit, the defendants at bar voluntarily assumed and continued the obligation of representing the Texas client.[11]

Gilhooly insists that his contacts were less substantial than Myers'. We find the differences to be merely quantitative, not qualitative. Gilhooly represented Trinity for a shorter period of time and on fewer matters than did Myers but, in consultation over a two-year period with a Trinity executive in Texas, he completed several patent applications. He also appeared in the Northern District of Texas litigation for eight months. Like Myers, Gilhooly had an ongoing relationship with Trinity. The quantitative differences are not decisive.[12] Nor is the fact that Gilhooly worked for the Myers firm; he nevertheless availed himself, as an attorney, of the opportunity to represent a Texas resident.

The second inquiry is whether the litigation resulted from injuries arising out of or related to the defendants' forum contacts. The district court answered this in the negative, considering the pertinent contacts to be those with Johnstown occurring in Pennsylvania or Illinois. In this the district court erred. The essence of Trinity's complaint is that its own lawyers counseled its competitor in bringing adverse litigation. There would be no injury or basis for a claim but for the fact that Myers and Gilhooly represented Trinity in Texas before and during their engagement by Johnstown. Assuming minimum contacts exist, as they do herein, a lawyer accused of violating his or her professional obligations to a client is answerable not only where the alleged breach occurred but also where the professional obligations attached.[13] In this instance, that attaching was within the state of Texas.

Finally, we turn to the reasonableness inquiry. Texas has a substantial interest in protecting its residents from an abusive breach of the attorney-client relationship by the attorneys. The

---

[11]*See Hylwa.*

[12]*Thompson.*

[13]*See Hylwa; Waterval v. District Court in and for El Paso County,* 620 P.2d 5 (Colo.1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

defendants have not demonstrated that other considerations outweigh this interest.  We therefore conclude that they are amenable to suit in Texas and that no due process violation is occasioned thereby.

REVERSED and REMANDED for further proceedings consistent herewith.